**W. Neil THOMAS, Jr. and wife, Betty M. Thomas, on behalf of themselves and all others similarly situated, Plaintiffs–Appellants,**

v.

**COSTA CRUISE LINES N.V. and Costa Crociere S.P.A., Defendants–Appellees.**

Court of Appeals of Tennessee, Eastern Section.

Sept. 15, 1994.

Application for Permission to Appeal Denied by Supreme Court Jan. 30, 1995.

---

W. Neil Thomas, Jr., W. Neil Thomas, III, Shumacker & Thompson, P.C., Chattanooga, for appellants.

James F. Sanders, George H. Cate, III, A. Scott Ross, Neal & Harwell, Nashville, for appellees.

*OPINION*

SUSANO, Judge.

The Plaintiffs booked passage on the Defendants' vessel, the MS COSTA ALLEGRA, for a trans-Atlantic Ocean cruise departing from San Juan, Puerto Rico, on April 17, 1993. According to the allegations of the Complaint, the trip was something less than the "Love Boat" experience. The cruise involved a boarding area without air conditioning; a cramped stateroom; a 9–hour delay in St. Thomas; an inoperative propeller which caused a further delay at sea; a crew with a poor attitude; and a missed scheduled port call at Ibiza due to the earlier delays. Because of their displeasure with the cruise, the Plaintiffs filed a class action suit in the Hamilton County Circuit Court alleging breach of contract of carriage against the Defendants, one of whom was the United States sales

agent for the cruise, while the other was the cruise operator. The Defendants filed a Motion to Dismiss with supporting documentation, including the form of the ticket issued to the Plaintiffs. The trial court dismissed the Complaint, apparently concluding that a suit in Tennessee was barred by a forum-selection clause in the ticket requiring that lawsuits regarding the cruise be filed in the courts of Florida or the point of embarkation. This appeal followed.

## I

The Plaintiffs purchased their cruise tickets through a travel agent in Chattanooga, with all other arrangements for the cruise being handled by the Defendant Costa Cruise Lines, N.V., the United States sales agent for the Defendant Costa Crociere, S.p.A., the operator of the MS COSTA ALLEGRA. According to the affidavit of the Plaintiff Mr. Thomas, he made payments for the cruise in January, ($712), February ($338) and March ($7,127.50), 1993. He received a payment receipt in early February for the first two payments, but the actual tickets for the cruise were not issued until March 16 and not received by the Plaintiffs, according to Mr. Thomas, until "sometime after March 16, 1993, along with a mass of other travel documents," including airline tickets, various instructions from the Defendants and a 68-page folder about the cruise.

The cruise ticket that each of the Plaintiffs received sometime between March 16 and April 17, was a multi-page document which included not only a basic ticket form, but also paragraphs of "General Conditions." The cover of the ticket included the words "IMPORTANT NOTICE" in bold, red print, below which was the following statement, also in red ink:

PASSENGERS READ THIS TICKET IN FULL UPON RECEIPT

In accepting this ticket passengers agree to be bound by all of its terms including its limitations of the passengers [sic] rights. Each passenger should carefully examine this ticket, especially the conditions on page 1, 2, 3 and 4.

A similar warning without the capitalized words or red ink appeared elsewhere in the ticket form.

There were 21 numbered paragraphs of conditions appearing beneath the heading "GENERAL CONDITIONS OF PASSAGE CONTRACT—TICKET" as a part of the ticket. Included among the "General Conditions" was the following:

(19) *CHOICE OF FORUM; NO ARREST*

All controversies, disputes and matters of any kind whatsoever arising out of the voyage, including any clauses [sic] arising from the death, bodily injury or pecuniary loss, or which may arise in connection with the formation, interpretation, execution or enforcement of this Contract may be instituted only in the courts of Florida or in the courts of the judicial district or circuit where the port of embarkation is located [San Juan, Puerto Rico], and any other action against the CARRIER will be considered void. Passenger hereby waives the right to arrest or otherwise detain the Vessel in any jurisdiction.

Our focus is on the effect of this provision on the facts of this case.

## II

The Defendants in this case moved for dismissal on three grounds:

First, the cruise ticket contract between Plaintiffs and Costa contains a forum selection clause that requires this case to be litigated, if at all, either in Florida or in Puerto Rico (the place of embarkation). Second the complaint fails to state a claim because Plaintiffs have failed to comply with the notice of claim provision of the cruise ticket contract. Third, the Complaint fails to state a fraud claim upon which relief can be granted.

The trial court dismissed the Plaintiffs' Complaint without giving a reason for doing so. Because we feel that the forum-selection clause issue is determinative, we do not reach the other defenses raised in the Defendants' Motion.

## III

We begin our analysis by noting that "[a] contract for the transportation of passengers is a maritime contract within admiralty jurisdiction." *Archawski v. Hanioti,* 350 U.S. 532, 533, 76 S.Ct. 617, 619, 100 L.Ed. 676 (1956); *see also The Moses Taylor,* 71 U.S. (4 Wall.) 411, 18 L.Ed. 397 (1867). Admiralty law is federal in nature, and the U.S. Constitution states that "[t]he judicial power shall extend ... to all cases of admiralty and maritime jurisdiction; ..." U.S. Const. art. III, sec. 2. Despite this provision, state courts have concurrent jurisdiction with federal courts over admiralty cases due to saving language found in 28 U.S.C. sec. 1333.[1] *See C.F. Rule Const. Co. v. Cumberland River Sand Co.,* 204 Tenn. 378, 321 S.W.2d 791 (1959); Grant Gilmore and Charles L. Black, Jr., *The Law of Admiralty* 37–40 (1975); David W. Robertson, *Admiralty and Federalism* 18–27 (1970). "The common law courts always had jurisdiction of a cause of action against a ship owner in contract or in tort, when it could be reached personally and money damages only were demanded. That right was not excluded by the admiralty grant in the Constitution ..." *C.F. Rule Const. Co.* at 792 (quoting *1 Benedict on Admiralty* 33, sec. 20 (6th ed. 1940)).

A recent decision of the United States Supreme Court specifically holds that in admiralty cases, federal law governs the enforceability of a forum-selection clause. *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). In that case, the plaintiffs purchased passage on a ship owned by the defendant Florida-based cruise line. After the plaintiffs had paid the entire price, the defendant sent them tickets containing a clause designating Florida courts as the agreed-upon forum for resolving any disputes. The plaintiffs board-ed the ship in Los Angeles, but while in international waters off Mexico one of the plaintiffs slipped on a deck mat and was injured. *Id.* at 111 S.Ct. 1524. Although noting that "it would be entirely unreasonable for us to assume that [plaintiffs]—or any other cruise passenger—would negotiate with [the defendant cruise line] the terms of a forum-selection clause in an ordinary commercial cruise ticket," *Id.* at 111 S.Ct. 1527, the Supreme Court nevertheless enforced the forum-selection clause. The Court stated that

> Including a reasonable forum clause in a form contract of this kind well may be permissible for several reasons: First, a cruise line has a special interest in limiting the fora in which it potentially could be subject to suit.... Additionally, a clause establishing *ex ante* the forum for dispute resolution has the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, ... Finally, it stands to reason that passengers who purchase tickets containing a forum clause ... benefit in the form of reduced fares reflecting the savings that the cruise line enjoys by limiting the fora in which it may be sued.

*Id.* at 111 S.Ct. 1527.

Our central inquiry is whether the forum-selection clause was part of the contract between the Plaintiffs and Defendants. *Carnival Cruise Lines, Inc.* mandates that we must go further and also address whether the terms of the clause are fair.

A lengthy line of admiralty decisions in the federal courts address the issue of when a provision is a part of a maritime contract. Recent federal appellate decisions have adopted a standard of "reasonable communicativeness" in determining whether particular provisions are a part of a maritime contract. *Lipton v. National Hellenic American Lines,* 294 F.Supp. 308 (E.D.N.Y. 1968). The United States Court of Appeals

---

1. That section provides in pertinent part that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, *saving to suitors in all cases all other remedies to which they are otherwise entitled."* (emphasis supplied). 28 U.S.C. sec. 1333 (1993). The highlighted clause has been construed to grant concurrent subject matter jurisdiction over most maritime matters to state courts. *See Southern Pacific Co. v. Jensen,* 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917); *Chelentis v. Luckenbach S.S. Co., Inc.,* 247 U.S. 372, 38 S.Ct. 501, 62 L.Ed. 1171 (1918). State courts must still apply federal substantive law in order to assure uniformity in maritime decisions.

for the Sixth Circuit has adopted a similar "reasonable notice" standard. *See Barbachym v. Costa Line, Inc.*, 713 F.2d 216 (1983). So long as a cruise line has done all that it reasonably can " 'to impress the importance of the terms and conditions upon the passenger,' " the conditions are generally held to be a part of a contract of passage. *Spataro v. Kloster Cruise, Ltd.*, 894 F.2d 44, 45 (2d Cir.1990) (quoting *Silvestri v. Italia Societa Per Azioni Di Navigazione*, 388 F.2d 11 (2d Cir.1968) (Friendly, J.)). We believe that the Defendants "reasonably communicated" the forum-selection clause to the Plaintiffs in the instant case by printing multiple warnings—some in red ink—on the passenger ticket regarding the provisions of the ticket, and by sending the tickets with their warnings to the Plaintiffs a month or so before embarkation.

■ In *Carnival Cruise Lines*, the Supreme Court stated that "[i]t bears emphasis that forum-selection clauses contained in form passage contracts are subject to judicial scrutiny for fundamental fairness." *Id.* at 111 S.Ct. 1528. The Court there analyzed the terms of the forum-selection clause to determine if it was intended to "discourage[ ] cruise passengers from pursuing legitimate claims." *Id.* In the instant case, we find no evidence that the Defendants selected Florida and Puerto Rico courts as the appropriate fora in order to discourage passengers from bringing legitimate claims: Costa Cruise Lines N.V. has its only United States office in Miami, Florida, and Costa Crociere, S.p.A. "regularly operated cruises departing from Florida ports." In view of the fact that the Defendants have strong ties to Florida, that the cruise in question left from Puerto Rico, and that the alleged breaches of contract occurred in international waters rather than in Tennessee, we view selection of Florida and Puerto Rico courts as the fora for resolving any disputes as reasonable. There is no

showing in the record before us that pursuit of a suit in Florida (if not Puerto Rico) would unduly burden the Plaintiffs. Frequently, personal injury claims arising out of automobile accidents are brought in states far from the claimant's state of residence. To require a Tennessee resident to file suit in Florida is neither unusual nor particularly burdensome.

■ In the case at bar, Plaintiff Mr. Thomas states in his affidavit that "I did not see anything [in the promotional literature] about a forum selection clause;" that "I did not notice at [the time of receipt of the cruise tickets] or later anything relating to forum selection or notice requirement;" and that "I considered that I had concluded the agreement with Defendants when I paid their required price and received their assurance that space described by them had been reserved in my name." The plaintiffs in *Carnival Cruise Lines* were in a situation similar to Mr. Thomas. They received their tickets with the forum-selection clause before embarkation but after full payment was made, *see Shute v. Carnival Cruise Lines*, 897 F.2d 377, 389 (9th Cir.1990) (footnote 11), *rev'd*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991); but the Supreme Court still reversed the United States Court of Appeals for the Ninth Circuit and enforced the forum-selection clause.[2] As noted above, we believe that the Plaintiffs' receipt of the contract terms approximately a month before embarkation, combined with their subsequent passage on the cruise, are sufficient to constitute ratification of the contract. While enforcement of terms in what is essentially a contract of adhesion may appear unfair to the Plaintiffs, it would be more unfair—and grossly inefficient—to compel cruise lines and other common carriers to negotiate all contract terms with their many passengers. Under different circumstances, however, as where the forum-selection clause or other such limiting provisions were given only to a group leader

2. According to paragraph 8 of the ticket in the instant case, the Plaintiffs would theoretically have been subject to a 25% penalty for cancelling their cruise reservations immediately upon receipt of their tickets. This is true because paragraph 8 provides for a 25% penalty if passage is cancelled within 16 to 45 days of the sailing date. In *Carnival Cruise Lines*, however, the United States Supreme Court enforced a forum-selection clause despite the fact that one contract provision stated "[p]assage money shall be deemed to be earned when paid and not refundable." *Carnival Cruise Lines* at 111 S.Ct. 1536 (Stevens, J., dissenting). The United States Supreme Court assumed, as do we, that such a provision would be unenforceable for a reasonable period of time following receipt of the ticket since it was not called to the passenger's attention in time to cancel with impunity.

or not given to passengers until they embarked, we might well take a very different view. *See Barbachym,* 713 F.2d 216 (6th Cir.1983) (refusing to enforce a contractual limitations period because the ticket stated that all conditions of transportation were held by the group's leader).

For the foregoing reasons, we believe that the forum-selection clause should be enforced and that therefore the Florida and Puerto Rico courts are the proper fora for this litigation. We do not reach Plaintiffs' issue of fraud, nor the Defendants' additional defenses.

The trial court's dismissal of the Plaintiffs' Complaint is affirmed, and this cause is remanded to the trial court for the collection of costs and such other action as may be appropriate. The costs of this appeal are taxed and assessed against the Appellants and their surety.

GODDARD, P.J. (E.S.), and McMURRAY, J., concur.